RENARD and others *against* HARGOUS.

The justices of the superior court of the city of New York have power to issue attachments against absconding, concealed or non-resident debtors.

They had such power as supreme court commissioners *ex officio* from January 1st, 1830, to the 1st of July, 1847, when that office was abolished; and the power was continued to them by the judiciary act of 1847. (*Laws of* 1847, 281, § 7.)[1]

It is not requisite that all the members of a firm doing business in this state should reside therein, to authorize an attachment to be issued under the statute (2 *R. S.*, 3, § 1, *sub.* 2), in their favor for a debt due from non-resident debtors on a contract made without the state.

Accordingly, where the application for an attachment against non-resident debtors in favor of several persons as creditors, did not show where the contract was made, and stated that the applicants or *some of them* resided in the state; and the affidavit of the facts and circumstances on which the applicacation was made, stated that the applicants carried on business in the city of New York, and that *one or more of them* resided within the state: *Held*, in an action on a bond executed to discharge the attachment, that the officer had jurisdiction to issue it, although in fact, one of the creditors resided in France, and this appeared by the pleadings in the action.

Renard *v.* Hargous, 2 Duer 540, affirmed.

APPEAL from a judgment of the superior court of the city of New York.

*The action was upon a bond executed by the de- [*260 fendant in January, 1849, to obtain the discharge of an attachment issued in December, 1848, by the Hon. Lewis R. Sandford, one of the justices of the superior court of the city of New York, on the application of the plaintiffs against the property of Louis S. Hargous and Emilie Voss, composing the firm of L. S. Hargous & Co., as non-resident debtors. The plaintiffs sought to recover the amount of the demand for which the attachment was issued. The cause was tried before Mr. Justice Duer in 1851. It appeared by the plead-

[1] See *Hayner* v. *James*, 17 N. Y. 316, 335–36. *Nash* v. *People*, 36 Ibid. 607, 609. *Delaney* v. *Brett*, 51 Ibid. 78, 80.

ings in the action that the plaintiffs were copartners, carrying on business in New York when the attachment was applied for and issued, but that one of them then resided in France. The plaintiffs, to maintain the action, read in evidence the application for the attachment, the affidavit of one of the applicants verifying the same, and the affidavits of two witnesses verifying the facts and circumstances to establish the grounds on which the application was made. The application named the plaintiffs as applicants and described them as "of the city of New-York," and stated that Hargous & Voss, residing in Vera Cruz, were indebted to the applicants in the sum of $3,360.92 over and above all discounts, and that such demand arose upon a contract which was stated; but the application did not state where the contract was made. The application then proceeded as follows: "And your applicants further show that the grounds upon which this application is founded, are that the said Louis S. Hargous and Emilie Voss are non-residents of this state and reside at Vera Cruz, in Mexico, as above mentioned, and your applicants or some of them reside in the State of New-York," concluding with a prayer for an attachment against the property of Hargous & Voss, according to the statute. The affidavit of one of the applicants verifying the application, stated that the facts set forth in the application were true. The affidavit of the two witnesses, after stating that they were not interested in the *application, was as follows: "That the following facts and circumstances to establish the grounds on which this application is made, are true, to wit: That the said Louis S. Hargous and Emilie Voss are, and each of them is a non-resident of the state of New York and a resident of Vera Cruz or elsewhere in the republic of Mexico, and that the said applicants carry on business in the city of New York, and one or more of them is a resident of the State of New York." The counsel for the defendant in due season objected to the reading in evidence of the application and

affidavits, on the ground that they did not show that the applicants for the attachment were residents of this state; and on the further ground that it was admitted by the pleadings in this action that one of the applicants was not a resident of this state when the application for the attachment was made, and excepted to the decision of the court permitting the same to be given in evidence. It was proved that Justice Sandford issued the attachment on the application and affidavits above mentioned to the sheriff of the city and county of New-York, who by virtue thereof seized property of Hargous & Voss; and that the attachment was discharged on the execution of the bond upon which the action was brought. The plaintiffs also gave evidence to establish the demand sought to be recovered.

When the plaintiffs rested, the counsel for the defendant moved that the plaintiffs be nonsuited, or that the complaint be dismissed on the ground that the attachment and all the proceedings thereon were void, because: 1. It did not appear by the application and affidavits that the parties making the application were, at the time it was made, residents of the State of New-York; 2. It appeared by the pleadings in this action that one of the applicants was not a resident of this state; 3. Mr. Justice Sandford, by whom the attachment was issued, had no jurisdiction to issue the same. The court overruled said objections and denied the motion and the counsel for the defendant excepted. Evidence *was given by the defendant controverting the alleged indebtedness of Hárgous & Voss to the [*262 plaintiffs, and several questions were made which are not important to be stated. The jury under the direction of the court rendered a verdict in favor of the plaintiffs for the amount of the debt claimed. A bill of exceptions was made by the defendant and heard in the first instance at a general term. The superior court at general term affirmed the decisions made at the trial and judgment was rendered in favor of the plaintiffs on the verdict. The defendant appealed to this court.

3 KERN.—17

*C. O'Conor*, for the appellant.

*F. B. Cutting*, for the respondents.

GARDINER, C. J.  I concur in the views of the learned
judge, who delivered the opinion of the superior court, that
after the 31st December, 1829, the only authority of the
judges of that court to issue attachments against non-resident
debtors, was to be deduced from the act making them
ex officio  supreme  court  commissioners.   As the laws
authorizing attachments were then repealed, the authority
of all judges and other officers of course ceased, whatever
might be the form in which it had been conferred.   The
Revised Statutes upon the same subject, which became the
law upon the first of January, 1830, withheld from the
judges of the supreme and of the superior courts, *eo nomine*,
this power, but granted it to supreme court commissioners,
and placed the judges of the superior court in that class of
officers, by virtue of their office.

The office of commissioner was abolished by the constitu-
tion, on the first of July, 1847 ; the authority in question was
then determined, unless it was continued in another form
by the act of May 12, 1847, providing for the election of
*judges of the superior court.   The 7th section of that
act declares " that the justices of the superior court
whose election is provided for by this act, shall have and pos-
sess the same powers and perform the same duties, as the jus-
tices of that court now have, possess and perform."   (*Laws
of* 1847, 281, § 7.)   The argument is, that as the judges at the
passage of the act, " had and possessed *virtute officio*, the au-
thority to issue attachments, and were required by the stat-
ute subsequently to perform the same duties that they then
performed, the power in question was *continued* after the 1st
July, 1847, and was properly exercised in the present case.

The act is certainly susceptible of this construction, and

as it was then adopted and has been acted upon from that time, I am inclined to acquiesce in it, although as an original question it may well be doubted whether the legislature intended anything more than to continue to the judges elected subsequently, the same powers which their predecessors as such possessed, without reference to those exercised by them as commissioners of the supreme court. It certainly was not designed to continue the office of commissioner, whether held by officers of that name or exercised in virtue of a distinct appointment, for this transcended the power of the legislature. But it was entirely competent for them to refer, by way of description to powers pertaining to the office of commissioner, and bestow them upon another class of officers without specifically enumerating them. This I think we are authorized to say has been done, and there is consequently no error in the judgment of the court below upon this point.

The second objection is to the insufficiency of the application for the attachment, because it did not show that the plaintiffs were residents of this state. It describes them as of the city of New-York, and states that the above mentioned applicants or some of them reside in the State of New-York. The affidavit of the witnesses accompanying the application states that the "above named applicants carry on business *in the city of New York, and one or more of them is a resident of the State of New York." It is admitted [*264 by the pleadings that one of the plaintiffs was a resident of France when the debt was contracted and when the application was made for the attachment. The statute, under which these proceedings were instituted, provides that the property of a debtor may be attached, whenever not being a resident of the state, "he is indebted to a creditor residing within this state, although upon a contract made elsewhere." (2 *R. S.*, 3, § 1, *sub.* 2.) The question presented is, whether the separate members of a mercantile firm are each of them creditors upon a debt due to the copartnership,

according to the true construction of the act in question. It is true that the affidavits of the witnesses show that the firm transacted business in the city of New-York, but nothing of this kind is mentioned in the application, nor in the statute, as a ground upon which the attachment should issue. If the defendants were non-residents and indebted to a creditor residing within the state, the judge had jurisdiction, and not otherwise, in the case as presented. Each co-partner is in strictness a creditor in a demand due the firm of which he is a member. He is legally and equitably interested in the debt, to which he is entitled as survivor, and is not only a proper but necessary party to a suit for its recovery. He represents the firm and can bind it as well as himself by his contracts, and is liable personally in *solido* for all the debts of the copartnership. As he would be responsible individually to the defendants to the extent of his property, for a claim growing out of the transaction stated in the record in their favor, there is no good reason why he should not as one of the creditors, in a debt due to himself and others jointly, avail himself of the provisions of a remedial statute, although he may be compelled to include as plaintiffs those who are not entitled to the same privilege. The right to the attachment does not arise from the contract, but is dependent upon the residence of the creditor. In the language of the 3d section "such application may be made by any creditor resident within this state." In the matter of Chipman, an absconding debtor (14 *John. R.*, 217), it appeared that the demand was against a copartnership, two of the members of which resided within the state, and the third had absconded. It was held that an attachment might issue for a debt due from the firm against the property of the absentee, although the other partners were residents and capable of being arrested. Although the demand was joint, each partner was considered a debtor, within the meaning of the act, and the same

Renard *against* Hargous.

principle would be equally applicable in beha'f of cred-itors in a debt of the same character. (*Crispe* v. *Perritt, Welles R.*, 467.)    Under the judiciary act of the United States, it has been repeatedly decided by the national court, that the word citizen of a state, in reference to the jurisdic-tion of that court, was to be construed as embracing all parties, where the interest was joint, concerned in that interest, and that each must be competent to sue, or liable to be sued in those courts. (3 *Cranch*, 267 ; 1 *Wheat.*, 91 ; 13 *Peters*, 519.)    The object of that provision, as explained by the United States court, was to afford to aliens and citi-zens a local court, presumptively free from local influences, in which their cause could be heard and determined.    These influences were not to be apprehended where the plaintiffs, or some of them and the defendants were citizens of the same state.    A change of forum was consequently unne-cessary as the state courts afforded a complete remedy.

The law of the United States makes the jurisdiction dependent upon the relation which the parties sustain to the local government ; our statute, upon the relation estab-lished by the contract, and the residence of any party who sustains that relation.    The United States court has never determined that one of two joint creditors is not a cre-ditor; but because they are " creditors, they must all be citizens of a different state than the defendants to avail *themselves of that jurisdiction."    I am inclined therefore to acquiesce in the decision of the superior [*266 court upon this point, although it is one by no means free from difficulty.

Upon the merits of the case I entertain no doubt as to the correctness of the judgment, which should be affirmed.

DENIO, HAND, CRIPPEN and DEAN, JJ., concurred in the foregoing opinion.

MARVIN, J., delivered an opinion in favor of reversal, on the ground that Justice Sandford had no jurisdiction to issue

the attachment, because the papers presented to him on the application did not show that all the creditors applying resided in this state, or that the indebtedness was upon a contract made within this state. As to the authority of a justice of the superior court to issue an attachment he came to the same conclusion as GARDINER, C. J.   JOHNSON, J., took no part in the decision

Judgment affirmed.